# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

KAWIN REESE                                                                      **PLAINTIFF**

V.                                                          **CAUSE NO. 1:06CV126-SA-JAD**

DEPUTIES CHRISTOPHER DALE GRAY, RONALD
WEST, AND MDOC AGENTS RANDY PERKINS AND
CHRISTOPHER RIEVES                                                           **DEFENDANTS**

## MEMORANDUM OPINION

Before the Court is Plaintiff's Motion for Rule 50 Judgment in Favor of Plaintiff in the Amount of $30,000.00; Alternatively, Motion for Rule 50 Judgment in Favor of Plaintiff in the Amount of Nominal Damages of $1.00; Alternatively, Motion for New Trial. [125]. After reviewing the motion, responses, rules, and authorities, the Court finds as follows:

## I. BACKGROUND

On Christmas day, 2005, John Lowe, an escaped fugitive from the Mississippi Department of Corrections' (MDOC) house-arrest program, was in Kawin Reese's home (house trailer). While there, John Lowe called his girlfriend, Lisa Spence, to come and pick him up. Spence instead contacted Randy Perkins, Lowe's MDOC house-arrest officer, and gave him directions to Reese's trailer. Perkins contends that Spence told him that Lowe was being held hostage by Antonio Reese, a drug dealer related to Kawin Reese.

Perkins, accompanied by MDOC Agent Christopher Rieves (collectively MDOC Defendants), and MDOC Agent Dallas Burkes, contacted the Monroe County Sheriff's

Department for backup. In his deposition, MDOC Agent Perkins testified that Antonio Reese was dangerous and previously had been charged with assaulting police officers.

At approximately 3:00 a.m. on December 26, MDOC Agents Perkins, Burkes, and Rieves arrived at Kawin Reese's trailer and found Lowe outside it. Lowe was arrested without incident. The MDOC Defendants maintain Lowe told them Antonio Reese was inside Kawin Reese's trailer. The MDOC Defendants (Agents Perkins and Rieves) entered Kawin Reese's trailer, without a warrant, and found him awake with his girlfriend. The two Monroe County Deputies, Gray and West (Monroe County Defendants), subsequently arrived at, and entered, Reese's trailer. According to Plaintiff, the MDOC Defendants searched his bedroom drawers, his trousers, and his girlfriend's purse.

Pursuant to 42 U.S.C. § 1983, Kawin Reese filed this action in April 2006, initially against unknown officers with the MDOC and Monroe County, but subsequently amended his complaint to name as defendants Monroe County Deputies Gray and West, and MDOC Agents Perkins and Rieves. Following discovery, a summary judgment motion was filed by the Monroe County Sheriff's Department and its two deputies (the three Monroe County Defendants). This Court granted MDOC Defendants an extension to file a similar dispositive motion; however, the Defendants never did. Subsequently, this Court granted the three Monroe County Defendants' motion and ordered Kawin Reese to show why summary judgment should not also be granted, sua sponte, to the MDOC Defendants.

After Kawin Reese responded, this Court granted summary judgment for the MDOC Defendants. The Fifth Circuit, however, determined that there were issues of material fact as to whether exigent circumstances existed for the search, and, as such, this case was tried from

Monday, May 17, 2010, through Wednesday, May 19, 2010. At trial, the jury considered the questions of exigent circumstances and qualified immunity. The jury answered two special interrogatories. The jury first gave an inconsistent response, determining that there were no exigent circumstances to enter the home and that the Defendants were entitled to qualified immunity, but still awarding the Plaintiff damages in the amount of $30,000. This Court directed the jury to then complete a revised verdict form. The jury then returned the second special interrogatory, finding again that there were no exigent circumstances and that the Defendants were entitled to qualified immunity, but this time returning a judgment in favor of Defendants.

Plaintiff filed this Motion on June 16, 2010, arguing that (1) Defendants are not entitled to qualified immunity as a matter of law and the issue should not have gone to the jury; (2) if the issue of qualified immunity was a factual issue for the jury, then there were no facts present to support such a verdict; (3) even if qualified immunity applies, Plaintiff is entitled to nominal damages of $1.00; and (4) alternatively, for a new trial.

## II. JUDGMENT AS A MATTER OF LAW and NEW TRIAL STANDARD

Rule 50 of the Federal Rules of Civil Procedure sets forth the standard for granting judgment as a matter of law:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue . . . In ruling on a renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct entry of judgment as a matter of law.

FED. R. CIV. P. 50(a)(1), (b).

In applying this standard, the court must consider all of the evidence in the light most favorable to the nonmovant, drawing all reasonable factual inferences in that party's favor, and leave credibility determinations and the weighing of evidence to the jury. McCrary v. El Paso Energy Holdings, Inc., 209 F. Supp. 2d 649, 651 (N.D. Miss. 2002) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-50, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). The court should grant a motion for judgment as a matter of law only when "the facts and inferences point so strongly and overwhelmingly in favor of [the moving] party that the court believes that reasonable [jurors] could not arrive at a contrary verdict." Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969).

In considering a Rule 50(b) motion for judgment as a matter of law following a jury verdict, the court must be "especially deferential" to the jury's findings. Brown v. Bryan Cnty, 219 F.3d 450, 456 (5th Cir. 2000). The Fifth Circuit's standard for evaluating a Rule 50(b) motion for judgment as a matter of law following a jury verdict is whether "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict." Am. Home Assur. Co. v. United Space Alliance, 378 F.3d 482, 487 (5th Cir. 2004). A jury verdict must stand unless there is lack of substantial evidence, viewed in the light most favorable to the successful party, to support the jury's factual findings, or the legal conclusions implied from the jury's verdict cannot, in law, be supported by those findings. Id.

As for the Plaintiff's motion for a new trial, the Federal Rules of Civil Procedure permits a trial court to grant a new trial based on that court's appraisal of the fairness of the trial and the reliability of the jury's verdict. FED. R. CIV. P. 59. The rule does not specify what

grounds are necessary to support such a decision, but states only that the action may be taken "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A); see also Smith v. Transworld Drilling Co., 773 F.2d 610, 613 (5th Cir. 1985). A new trial may be granted, for example, if the district court finds that the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in the course of the trial. See, e.g., Eyre v. McDonough Power Equip., Inc., 755 F.2d 416, 420-21 (5th Cir. 1985); Westbrook v. Gen. Tire and Rubber Co., 754 F.2d 1233, 1241 (5th Cir. 1985); Carson v. Polley, 689 F.2d 562, 570-71 (5th Cir. 1982); Martinez v. Food City, Inc., 658 F.2d 369, 372-74 (5th Cir. 1981); Conway v. Chem. Leaman Tank Lines, Inc.., 610 F.2d 360, 363 (5th Cir. 1980).

## III. ANALYSIS AND DISCUSSION

### Qualified Immunity as a Question of Fact for the Jury

Plaintiff claims that the issue of qualified immunity was an issue of law for the court, not an issue of fact for the jury.[1]  It is logically preferred that the applicability of qualified immunity should be determined at the earliest possible point in litigation, as qualified immunity is immunity not only from liability, but also from suit. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002). While the issue of qualified immunity is indeed a question of law, see Hunter v. Bryant, 502 U.S. 224, 228, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991), the Fifth Circuit has found that, in certain circumstances where there remain disputed

---

[1] Plaintiff's Motion never once appears to challenge the actual jury instruction on qualified immunity. Instead, Plaintiff's focus is on the fact that the issue went to the jury in the first place.

issues of material fact relative to immunity, a properly instructed jury may decide the question. See Presley v. City of Benbrook, 4 F.3d 405, 410 (5th Cir. 1993); see also Sikes v. Gayton, 218 F.3d 491, 493-94 (5th Cir. 2000). If the application of qualified immunity remains undecided until trial, the defense may be submitted to the jury which must then determine the objective legal reasonableness of the official's conduct. McCoy v. Hernandez, 203 F.3d 371, 376 (5th Cir. 2000); see also Castellano v. Fragozo, 311 F.3d 689, 704 (5th Cir. 2002) (jury may resolve issue of qualified immunity if facts about official conduct are in dispute), rev'd on other grounds, 352 F.3d 939 (5th Cir. 2003); White v. Walker, 950 F.2d 972, 976 (5th Cir. 1991) ("The entitlement to qualified immunity may be established as a matter of law by the district court. But if there are triable issues of fact about whether an officer could reasonably believe his conduct legal, then a jury should evaluate the question."); Poppell v. City of San Diego, 149 F.3d 951, 961 (9th Cir. 1998) (affirming district court's decision to submit to jury question of whether qualified immunity proper, because immunity depended on resolution of factual issue); Maestas v. Lujan, 351 F.3d 1001, 1010 (10th Cir. 2003) (district court properly presented reasonableness element of qualified immunity analysis to jury; jury may determine qualified immunity when there is a disputed issue on objective reasonableness of defendant's conduct); but see, e.g., Willingham v. Crooke, 412 F.3d 553, 560 (4th Cir. 2005) (though jury should resolve relevant factual issues, court should decide legal question whether defendant is entitled to qualified immunity); Littrell v. Franklin, 388 F.3d 578, 584-85 (8th Cir. 2004) ("The issue of qualified immunity is a question of law for the court, rather than the jury, to decide . . . ."); Bennett v. Murphy, 274 F.3d 133, 136-37 (3d Cir. 2001).

Specifically, in <u>Snyder v. Trepagnier</u>, the Fifth Circuit, noted that "*if the issue is not decided until trial*, the defense is not waived *but goes to the jury*, which must determine the objective legal reasonableness of [the] officer's conduct by construing the facts in dispute." 142 F.3d 791, 799 (5th Cir. 1998) (emphasis added) (alteration in original) (internal quotations omitted). In this case, the issue was not decided before trial. While this Court sua sponte granted qualified immunity to these Defendants after finding that exigent circumstances existed, the Fifth Circuit remanded the case, finding that material facts were in dispute as to whether exigent circumstances were present. <u>See</u> <u>generally</u> <u>Reese v. Monroe Cnty Sheriff's Dept</u>., 327 F. App'x 461 (5th Cir. 2009). As such, the Fourth Amendment issue *and* the issue of qualified immunity properly went to the jury.

### *Rule 50 Qualified Immunity and Consistency of the Verdict Motions*

Based on statements made by Defendant Perkins during trial, Plaintiff claims that there was not a sufficient legal basis for a reasonable jury to find that the Defendants were entitled to qualified immunity. Further, Plaintiff's Rule 50 motion asserts that since the jury found that Plaintiff's Fourth Amendment rights were violated, the jury could not also have found that Defendants were entitled to qualified immunity. This latter argument made by Plaintiff appears to be a challenge to the inherent consistency and reliability of the verdict itself, as opposed to the legal basis supporting the verdict. As such, the Court discusses both the legal evidentiary basis for the qualified immunity verdict, as well as any inconsistencies in the jury's finding.

<u>A.</u>  <u>Rule 50 Qualified Immunity Motion</u>

Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right. Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003). The defendant must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Bazan v. Hidalgo Cnty, 246 F.3d 481, 489 (5th Cir. 2001). Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. Id. A claim of qualified immunity requires the court to engage in a two-step analysis. The court determines whether the defendant has violated an actual constitutional right, see McClendon, 305 F.3d at 323, and if the answer is "no," the analysis ends. Freeman v. Gore, 483 F.3d 404, 410-11 (5th Cir. 2007). If the answer is "yes," then the court considers whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. Id. at 411. Prior to January 2009, this two-step process was a mandatory sequential analysis, meaning that courts were required to first analyze "step one" – the constitutional violation question – before moving to "step two." Saucier v. Katz, 533 U.S. 194, 200-01, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled in part by* Pearson v. Callahan, 555 U.S. 223, ---, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). The mandatory nature of this sequential analysis was undermined in Pearson v. Callahan, in which the Court held that while courts may analyze qualified immunity by engaging in the Saucier "two-step" analysis described above, they are not required to do so and may skip the first question entirely and instead begin by determining whether the conduct was objectively reasonable under clearly established law. 129 S. Ct. at 818. This immunity defense gives ample room for mistaken judgments by protecting all but the plainly incompetent or those

who knowingly violate the law. <u>Mendenhall v. Riser</u>, 213 F.3d 226, 230 (5th Cir. 2000) (citations omitted).

Over the years, the doctrine of qualified immunity has endured considerable transformation. After the Supreme Court's recognition of a right of action for constitutional torts under <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388, 397, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), the Supreme Court began developing this defense of qualified immunity to protect federal employees against liability for, and the burden of defending themselves against, alleged violations of constitutional rights. As first formulated in <u>Butz v. Economou</u>, 438 U.S. 478, 495-98, 507, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978), qualified immunity had both an objective and subjective element: the federal official was entitled to immunity if there were reasonable grounds to believe that the challenged conduct did not violate a constitutional right (the objective element) and the official undertook the challenged conduct in a good-faith belief that the conduct was valid (the subjective element). However, on further consideration, the Court in <u>Harlow v. Fitzgerald</u> stated, "[t]he subjective element of the good-faith defense frequently has proved incompatible with our admonition in <u>Butz</u> that insubstantial claims should not proceed to trial." 457 U.S. 800, 815-16, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Therefore, the modern qualified immunity doctrine is viewed only through the lens of objective reasonableness. <u>Id.</u>, at 815-16, 102 S. Ct. 2727.[2]

---

[2] While qualified immunity focuses on objective conduct as opposed to subjective intent, the Supreme Court made clear in <u>Crawford-El v. Britton</u> that <u>Harlow</u> does not prohibit inquiry into a defendant's subjective intent when it pertains to an essential element of the alleged constitutional violation. 523 U.S. 574, 588-89, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998). <u>Crawford-El</u> was a First Amendment retaliation case where the defendant's intent was element of the claim. <u>Id.</u> Here, the Defendants' state of mind is irrelevant to the elements of

Plaintiff's Rule 50 Motion rests, almost entirely, upon two questions posed to Defendant Perkins during trial:

> Q:    You take the position, as I understand it, that if somebody's on probation, you could go anywhere and get him, right?
>
> A:    Yes, sir.
>
> Q:    In other words, you could go into my house or Judge Aycock's house or the juror's house and get him if he's on probation?
>
> A:    If he's on house arrest, I can, yes, sir.[3]

While Defendant Perkins' subjective knowledge of Fourth Amendment jurisprudence was mistaken, the Court is nevertheless unable to say that the jury did not have a legally sufficient evidentiary basis for finding for Defendants on the issue of qualified immunity.

The Harlow Court made clear that whether or not qualified immunity will shield a government official from protection rests entirely upon an objective inquiry. Id., 102 S. Ct. 2727. Harlow was a suit alleging that senior advisors to President Nixon had conspired to terminate the plaintiff, a presidential aide responsible for congressional relations, in violation of his constitutional rights. Id. at 802-03, 102 S. Ct. 2727. The Court's benchmark ruling made clear that even an allegation that the defendants acted with malice does not displace the cloak of qualified immunity, as the Court's objective standard precludes inquiries into a defendant's subjective state of mind. Id. at 817, 102 S. Ct. 2727; see also Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986) ("[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable

---

Plaintiff's Fourth Amendment violation. Thus, Crawford-El's limited allowance for inquiry into a defendant's state of mind is not at issue.

[3] During trial, Plaintiff asked similar questions to Defendant Christopher Rieves.

manner.”); Babb v. Dorman, 33 F.3d 472, 478 n.8 (5th Cir. 1994) (“[A]llegation that [the Defendant] purposefully deprived [the plaintiff] of his constitutional rights is insufficient to subject [the Defendant] either to the costs of trial or to the burdens of broad-reaching discovery”) (citations omitted); Jureczki v. City of Seabrook, Tex., 760 F.2d 666, 669 (5th Cir. 1985) (an officer’s bad faith in obtaining or executing arrest warrant does not give rise to a Section 1983 action where probable cause exists); Smith v. Reddy, 101 F.3d 351, 357 (4th Cir. 1996) (noting that the qualified immunity inquiry is an objective one; “[s]ubjective factors involving the officer’s motives, intent, or propensities are not relevant.”).

Here, Plaintiff’s motion is grounded in the fact that Defendant Perkins’ was not familiar with clearly established law, as he testified that he believed he could enter anyone’s house in order to locate an individual on probation. However, while officers are indeed charged with knowing clearly established law, see Harlow, 457 U.S. at 818-19, 102 S. Ct. 2727, there is no longer an inquiry into whether they subjectively acted upon that law. See Crawford-El v. Britton, 523 U.S. 574, 588, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998) (“Under [the Harlow] standard, a defense of qualified immunity may not be rebutted by evidence that the defendant’s conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant’s subjective intent is simply irrelevant to that defense.”); Sanchez v. Swyden, 139 F.3d 464, 467 (5th Cir. 1998) (“The subjective intent of the public official is irrelevant . . . .”); Stroik v. Ponseti, 35 F.3d 155, 158 (5th Cir. 1994) (stating that “the only question is whether Ponseti’s use of force was ‘objectively reasonable’ in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation”). Instead, the qualified immunity analysis looks, with hindsight, at the

defendant's *conduct* – not with hindsight at whether he subjectively understood legal principles.[4] See Pierce v. Smith, 117 F.3d 866, 871 (5th Cir. 1997) (noting that a state official whose "conduct" deprives another of a constitutional right may still be entitled to qualified immunity). That is, this objective test announced in Harlow focuses on whether it would be clear to a "hypothetical" reasonable officer that the defendant's conduct was unlawful in the situation he confronted. See, e.g., Henry v. Purnell, 619 F.3d 323, 344 (4th Cir. 2010); Hanson v. City of Fairview Park, Ohio, 349 F. App'x 70, 80 (6th Cir. 2009); Monteiro v. City of Elizabeth, 436 F.3d 397, 409 (3d Cir. 2006); Howard v. Vandiver, 731 F. Supp 1290, 1298 n.22 (N.D. Miss. 1990). This hypothetical reasonable person is an objective observer, who is aware of the facts known to the official but possesses an independent knowledge of governing legal precepts. See Harlow, 457 U.S. at 806, 102. S. Ct. 2727; see also King v. Chide, 974

---

[4] While qualified immunity does not protect ". . . . those who *knowingly* violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) (emphasis added), the Plaintiff never suggests that the Defendants in this case "knowingly" violated the Fourth Amendment, as Plaintiff's motion is grounded in the fact that Defendant Perkins did not have a subjective knowledge of the law. Further, while qualified immunity also does not protect the plainly incompetent, the Court, under Harlow, judges this plain incompetence standard objectively, by looking at the Defendants' conduct and actions, as opposed their subjective knowledge, under clearly established law. See, e.g., Heartland Acad. Cmty. Church v. Waddle, 595 F.3d 798, 807-09 (8th Cir. 2010) (court discussed how the evidence presented established a case that was "so outrageous" that the defendants "*acted* in a plainly incompetent manner or knowingly violated the law") (emphasis added); Hoyer v. DiCocco, 224 F. App'x 103, 104 (2d Cir. 2007) ("We are unable to find on the basis of the present record that DiCocco [ ] acted in a plainly incompetent manner. . . ."); Wallace v. Abell, 217 F. App'x 124, 127 (3d Cir. 2007) ("[T]he doctrine of qualified immunity protects [the defendant] unless he acted in a plainly incompetent manner or knowingly violated the law . . . ."); Thacker v. Lawrence Cnty, 182 F. App'x 464, 472 (6th Cir. 2006) ("The record simply does not reflect that the deputies acted in a plainly incompetent manner . . . ."); Bethany v. Reescano, 2009 WL 5216887, at *5 (E.D. Tex. Dec. 30, 2009) ("Even if [the officer] was wrong in believing that her actions comported with the law . . . [the plaintiff] has not shown that [the officer's] actions were unreasonable in light of clearly established law, nor that she acted in a manner which was plainly incompetent or that she knowingly violated the law.").

F.2d 653, 657 (5th Cir. 1992) ("Qualified immunity cloaks a police officer from liability if a reasonably competent law enforcement agent would not have known that his actions violated clearly established law."). As Justice Scalia, while a D.C. Circuit judge, concluded, "Harlow precludes monetary relief for a violation of constitutional rights by an officer . . . so long as the law enforcement community in general considers his conduct *arguably* proper." Halperin v. Kissinger, 807 F.2d 180, 186 (D.C. Cir. 1986) (emphasis added); see also Malley, 475 U.S. at 341, 106 S. Ct. 1092 ("[I]f officers of reasonable competence could disagree on the issue, immunity should be recognized."); Hart v. O'Brien, 127 F.3d 424, 444 (5th Cir. 1997), *abrogated on other grounds by* Kalina v. Fletcher, 522 U.S. 118, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997) ("In other words, there must not even 'arguably' be probable cause for the search and assert for immunity to be lost.") (citing Santiago v. Fenton, 891 F.2d 373, 386 (1st Cir. 1989)); White v. Taylor, 959 F.2d 539, 544 (5th Cir. 1992) ("If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity."); Manganiello v. City of New York, 612 F.3d 149, 165 (2d Cir. 2010) ("That is, even if the right at issue was clearly established in certain respects . . . an officer is still entitled to qualified immunity if officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context.") (citations omitted).

In this case, if Defendant Perkins would have known the law – but failed to act objectively reasonable – his subjective knowledge of the law could not *gain* him a qualified immunity defense. Thus, it follows that, if Perkins' conduct was objectively reasonable, his subjective lack of knowledge on the law cannot *lose* him a defense either. If allegations of malice cannot divest an official of a qualified immunity defense – as was the case in Harlow –

allegations of ignorance of the law cannot either, as subjective error is appreciably less culpable than acting with bad faith or improperly-motivated intent.  In fact, this type of vacillating back and forth over what the defendant was motivated by or what he subjectively knew about the law is exactly what the Supreme Court wished to obviate in Harlow, as the Court noted that "[j]udicial inquiry into subjective motivation . . . can be peculiarly disruptive of effective government."[5] Harlow, 457 U.S. at 817, 102 S. Ct. 2727; see also Lisa R. Eskow & Kevin W. Cole, The Unqualified Paradoxes of Qualified Immunity: Reasonably Mistaken Beliefs, Reasonably Unreasonable Conduct, and the Specter of Subjective Intent That Haunts Objective Legal Reasonableness, 50 BAYLOR L. REV. 869, 890 (1998) (noting that "Harlow itself made clear that it was advocating an objective standard in order to *preclude inquiries into a defendant's actual knowledge of the law* or his personal motive . . . .") (emphasis added). Specifically, the Harlow Court explained that,

> The subjective element of the good-faith defense frequently has proved incompatible with our admonition in Butz that insubstantial claims should not proceed to trial. Rule 56 of the Federal Rules of Civil Procedure provides that disputed questions of fact ordinarily may not be decided on motions for summary judgment. And an official's subjective good faith has been considered to be a question of fact that some courts have regarded as inherently

---

[5] Based on its concern for "effective government," the Court in Harlow admonished that "[u]ntil th[e] threshold immunity question is resolved, discovery should not be allowed." 457 U.S. at 818, 102 S. Ct. 2727.  While the Court in Anderson v. Creighton, 483 U.S. 635, 646 n.6, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987), slightly modified this prohibition against discovery, noting that limited discovery "tailored specifically to the question of . . . qualified immunity" is allowed if necessary, this reluctance to allow any discovery into the issue of immunity is noteworthy in the context of this case. Plaintiff's Rule 50 Motion focuses on testimony that came out at trial regarding Defendant Perkins' subject knowledge of the law. Not only has the Court precluded this type of subjective inquiry when determining qualified immunity, but this trial testimony is exactly the type of "discovery" that courts generally either do not allow, have available, or even take into account when deciding whether a public official is entitled to immunity, as the majority of qualified immunity cases are and "should be resolved at the earliest possible stage in litigation." Id., 107 S. Ct. 3034.

requiring resolution by a jury. In the context of <u>Butz</u>'s attempted balancing of competing values, it now is clear that substantial costs attend the litigation of the subjective good faith of government officials. Not only are there the general costs of subjecting officials to the risks of trial-distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service. There are special costs to "subjective" inquiries of this kind. Immunity generally is available only to officials performing discretionary functions. In contrast with the thought processes accompanying "ministerial" tasks, the judgments surrounding discretionary action almost inevitably are influenced by the decisionmaker's experiences, values, and emotions. These variables explain in part why questions of subjective intent so rarely can be decided by summary judgment. Yet they also frame a background in which there often is no clear end to the relevant evidence. Judicial inquiry into subjective motivation therefore may entail broad-ranging discovery and the deposing of numerous persons, including an official's professional colleagues. Inquiries of this kind can be peculiarly disruptive of effective government . . . By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts.

<u>Harlow</u>, 457 U.S. at 817-19, 102 S. Ct. 2727 (footnotes omitted). Therefore, while Defendants may not have subjectively *known* the law, it is possible that their actions were still reasonable *under* the law. The question for the Court then is just that: whether a jury could find that the Defendants' conduct, irrespective of subjective knowledge or motivation, was objectively reasonable under clearly established law.

As noted above, under the qualified-immunity analysis, courts now have discretion in the sequence in which they address the two-step analytical framework. <u>Pearson</u>, --- U.S. ---, ---, 129 S. Ct. at 818.  The <u>Pearson</u> Court held that "judges of the district courts and court of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Id.</u> Thus, courts are now authorized to evaluate

the two factors in the order most appropriate for the specific case. In this case, the jury has already determined that the Plaintiff's Fourth Amendment rights were violated; thus, the Court focuses its attention on the second step in the immunity analysis in order to determine whether a reasonable jury could have found that, despite the fact that Plaintiff's constitutional rights were violated, the Defendants are still entitled to qualified immunity.[6]

Here, as Plaintiff rightly advocates, warrantless searches and seizures inside someone's home are presumptively unreasonable unless the occupants consent or exigent circumstances exist to justify the intrusion. Payton v. New York, 445 U.S. 573, 586, 590, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); United States v. Richard, 994 F.2d 244, 247 (5th Cir. 1993). While the above Fourth Amendment principle is indeed clearly established (and the jury found that this constitutional right was violated), in order to defeat a claim of qualified immunity, a plaintiff must show that the right the official violated is clearly established in a more "particularized" sense – "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[7] Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987); see also Wilson v.

_____

[6] The Fifth Circuit appears to have, in some instances, treated the second prong of the qualified immunity analysis as a two-tiered step. See Petta v. Rivera, 143 F.3d 895, 911 (5th Cir. 1998) (dividing the second prong into two inquiries: whether the allegedly violated constitutional right was clearly established at the time of the incident in question; and, if so, whether the conduct of the defendant was objectively unreasonable in light of that clearly established law).

[7] Generally, to make this "clearly established" showing, a plaintiff must present "a consensus of cases of persuasive authority," Wilson v. Layne, 526 U.S. 603, 617, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999), which make the "contours of the right . . . sufficiently clear" when examining the right in a "particularized" sense, Anderson, 483 U.S. at 640, 107 S. Ct. 3034. Here, the *only* authority Plaintiff presented was that general Fourth Amendment law is clearly established. However, if the Court framed the question at that level of generality, the Court would inevitably fail to examine the "information possessed by the searching officials." Id. at 641, 107 S. Ct. 3034.

Layne, 526 U.S. 603, 615, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999) ("It could plausibly be asserted that any violation of the Fourth Amendment is 'clearly established,' since it is clearly established that the protections of the Fourth Amendment apply to the action of police . . . However, as we explained in Anderson, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."); Petta v. Rivera, 143 F.3d 895, 899 (5th Cir. 1998) ("It is not necessary, however, that prior cases have held the particular action in question unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.") (citations omitted); Barts v. Joyner, 865 F.2d 1187, 1190, 1194 (11th Cir.), cert. denied, 493 U.S. 831, 110 S. Ct. 101, 107 L. Ed. 2d 65 (1989) ("The line between the lawful and the unlawful is often vague. Harlow's 'clearly established' standard demands that a bright line be crossed. The line is not to be found in abstractions-to act reasonably, to act with probable cause, and so forth-but in studying how these abstractions have been applied in concrete circumstances.").

Anderson was a suit alleging that federal law enforcement officers had participated in an unreasonable search in violation of the Fourth Amendment. 483 U.S. at 637-38, 107 S. Ct. 3034. In clarifying the precise contours of qualified immunity, the Supreme Court explained that

> The operation of this [objective reasonable] standard . . . depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of Harlow. Plaintiffs would be able to convert the rule of qualified immunity that

our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. <u>Harlow</u> would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." <u>Davis, supra, 468 U.S., at 195, 104 S.Ct., at 3019.</u> It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense . . . .

<u>Id.</u> at 639-40, 107 S. Ct. 3034. The <u>Anderson</u> Court disagreed with the appellate court's holding, as the appellate court's "brief discussion of qualified immunity consisted of little more than an assertion that [the] general right Anderson was alleged to have violated – the right to be free from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances – was clearly established." <u>Id.</u> at 640, 107 S. Ct. 3034. The appellate court failed to consider whether the law was clearly established *in the circumstances* in which Anderson was confronted. <u>Id.</u> at 640-41, 107 S. Ct. 3034. Importantly to the present case, the Court found that "[i]t does not follow immediately from the conclusion that it was firmly established that warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment that Anderson's search was objectively legally unreasonable." <u>Id.</u> at 641, 107 S. Ct. 3034. Thus, under <u>Anderson</u>, Plaintiff's assertion that general Fourth Amendment law (i.e., that "Defendants could not search Plaintiff's home without a warrant absent exigent circumstances") is clearly established does not automatically compel the conclusion that the law was clearly established in the situation in which the Defendants in this case were confronted. <u>Anderson</u> mandates a more fact-specific framing of the question.

Here, during trial, the officers testified that Lisa Spence, John Lowe's girlfriend, told Defendants that John Lowe, an escaped fugitive, was being held hostage at Plaintiff's address. Further, Perkins testified that Spence told him that Lowe was being held at Antonio Reese's address. Spence also confirmed Perkins' testimony that Lowe told her he was at Antonio's house. Spence stated that when she asked Lowe where he was, he told her he was at "Anthony's" house, which is what Lowe called Antonio.[8] Similarly, Perkins asserted that he had previously been informed by Antonio's probation officer that the Plaintiff's trailer is where Antonio resided. Thus, Perkins stated that he thought he was entering Antonio's house, not the Plaintiff's. Additionally, the officers testified that, by being in contact with Lowe, Antonio Reese was in violation of his probation, and his probation officer told the officers to arrest Antonio. Upon arrival to Plaintiff's address, the officers arrested Lowe outside the trailer. The officers averred that Lowe, upon arrest, told them that Antonio Reese was inside the house. Perkins testified that he was "concerned" about Antonio because he "knew [he] was dangerous."

Since the Supreme Court has prescribed that the "clearly established" test is "fact-specific," all of this "information possessed by the searching officials"[9] must be "examin[ed]"

---

[8] During trial testimony, John Lowe denied that he told Lisa Spence he was being held hostage. He further denied saying that he was at Antonio Reese's house. However, Lowe conceded that, on the night in question, he was under the influence of both drugs and alcohol. While it was the jury's role, as the trier of facts, to discern between these various individuals' testimony, the Court notes that, in deciding the qualified immunity issue, it would not have been unreasonable for the jury to place more credibility in the testimonies of Perkins and Spence than the testimony of Lowe, based on Lowe's drug and alcohol use on that night.

[9] While the Supreme Court stressed the importance of the "information possessed by the searching officials," the Court made sure to note that this does not "reintroduce into qualified immunity analysis the inquiry into officials' subjective intent that Harlow sought to minimize." Anderson, 483 U.S. at 641, 107 S. Ct. 3034. Rather the information possessed by

in order "to conclude [whether] [the] search was supported by probable cause or exigent circumstances." Id., 107 S. Ct. 3034. Based on the above information that was possessed by the Defendants in this case, a jury could have found that, despite an actual violation of the Fourth Amendment, the Defendants still acted objectively reasonable. This is especially true given that, while abstract Fourth Amendment principles are well established, whether exigent circumstances existed under the facts of this case does not appear to be clearly established. In United States v. Maldonado, 472 F.3d 388, 395 (5th Cir. 2006), the court held that exigency justified the warrantless search of a home when a suspect was arrested near its front door. In Maldonado, agents planned to execute an arrest warrant for a man named Gerardo Castillo. Id. at 391. The agents went to the location where Castillo said he was staying. Id. The agents were unaware it was Maldonado's residence. Id. Castillo was arrested in the driveway outside of Maldonado's house, and the Fifth Circuit found this was "near enough to the trailer to place the agents in immediate danger." Id. at 393. The Maldonado court found that "the agents were exposed in an open area in front of the trailer with only a telephone pole to afford cover." Id. The agents testified that they saw someone peak through the curtains, but they had "no specific knowledge that weapons were inside the trailer." Id. at 394. The Fifth Circuit examined its prior case law, such as United States v. Watson, where officers arrested a suspect on the front porch of his house and subsequently conducted a "protective sweep of the house to look for dangerous persons." Id. at 395. The court noted that, in Watson, an officer had "testified that he lacked specific reason to believe other individuals were in the house but that the possibility always exists." Id. (citation omitted). The Maldonado court observed that

_____

the individual officials plays a role in the objective inquiry, from the prospective of a hypothetical reasonable officer.

20

it "upheld the validity of the protective sweep [in <u>Watson</u>] even though the factual basis for the[] concerns [wa]s disputable." <u>Id.</u> The Fifth Circuit held that courts "must look to the totality of the circumstances and for both direct and circumstantial evidence of exigency." <u>Id.</u>

While the Fifth Circuit made clear, when reversing a previous grant of summary judgment in this case, that <u>Maldonado</u> and <u>Watson</u> do not "compel the conclusion" that an arrest on the presence of an individual's property, no matter how far distant from the home, justifies a warrantless search, the Fifth Circuit did not foreclose the possibility that the search in this case was justified due to such exigent circumstances. <u>Reese v. Monroe Cnty Sheriff's Dept.</u>, 327 F. App'x 461, 463 (5th Cir. 2009). Rather, the Fifth Circuit remanded the case because there were material facts regarding such exigency for the jury to determine.[10] <u>Id.</u> The

_____

[10] When previously granting summary judgment to the Defendants, instead of analyzing the objective reasonableness of the Defendants' conduct under clearly established law, this Court, following <u>Saucier</u>'s (former) mandate that courts must initially examine the constitutional issue, first addressed whether there was a constitutional violation at all and concluded that there was not because exigent circumstances existed. The second step in the qualified immunity analysis went virtually unexamined because this Court found that no constitutional violation was present. Thus, this Court's previous decision granting summary judgment to some extent highlights the problems that were caused by the rigid two-step analysis formerly articulated in <u>Saucier v. Katz</u> – a problem the Supreme Court attempted to rectify in <u>Pearson v. Callahan</u>. As Justice Breyer noted in <u>Broseau v. Haugen</u>, – cited by the <u>Pearson</u> Court – <u>Saucier</u>'s "rigid order of battle" previously "require[d] courts unnecessarily to decide difficult constitutional questions when there [wa]s available an easier basis for the decision (e.g., qualified immunity) that w[ould] satisfactorily resolve the case before the court." 543 U.S. 194, 201-02, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (Breyer, J., joined by Scalia and Ginsburg, JJ., concurring). In <u>Pearson</u>, the court of appeals had held that the respondent adduced facts sufficient to make out a violation of the Fourth Amendment, thus precluding summary judgment. 129 S. Ct. at 813. The Supreme Court, in abandoning <u>Saucier</u>, reversed the court of appeals and granted qualified immunity to the defendants under the second-prong of the qualified immunity analysis, despite the fact that the respondent, like the Plaintiff in this case, had shown that facts existed as to whether there was a Fourth Amendment violation. <u>Id.</u> at 822-23. Thus, after <u>Pearson</u>, this Court could have granted summary judgment to these Defendants based on the second prong of qualified immunity,

Fifth Circuit noted that whether or not exigency exists when there is an arrest near the plaintiff's home depends to some extent upon the proximity of the arrest to the home. Id. at 463-64. Further, the cases cited by the Fifth Circuit in remanding this action dealing with when an arrest outside the home can create exigency are couched in indefinite terms. For example, the Fifth Circuit noted that in Watson, the court had "concluded that an arrest near a dwelling *might* justify a warrantless search." Id. (emphasis added).[11] In order to strip away an officer's immunity defense, a plaintiff must allege facts sufficient to demonstrate that *no reasonable officer* could have believed his actions were proper. Babb, 33 F.3d at 477; see also Humphrey v. Mabry, 482 F.3d 840, 847 (6th Cir. 2007) (noting that immunity should be recognized if officers of reasonable competence could disagree on the legality of the action). After taking into account the information possessed by the officers and examining Fifth Circuit precedent, the Court is unable to say that no reasonable officer could have believed that the Defendants' actions were proper.

It is important that the issue currently before the Court, unlike the issue in Maldonado, Watson, or even the Court's previous decision in this case, is not whether the facts here give rise to a Fourth Amendment violation or whether the facts actually amount to exigent circumstances. Rather, the question is whether "reasonable and impartial minds *could* reach the conclusion," American Home Assurance Company, 378 F.3d at 487 (emphasis added), that, viewed objectively, the Defendants' actions were reasonable. In reviewing the jury's decision, it is important for the Court to "be mindful of [its] role, which is not to ask whether

---

without first having to decide the constitutional question of whether the Fourth Amendment was in fact violated.

[11] The Court notes that while, in Watson, the arrest was outside of the arrestee's home, in Maldonado, the arrest, like the one in this case, was outside someone else's home.

22

[it] would have reached the same conclusion as the jury, but rather to ask whether a reasonable jury could have reached the same result." Jordan v. Ector Cnty, 516 F.3d 290, 300 (5th Cir. 2008). The Court only grants judgment as a matter of law if "the facts and inferences point so strongly and overwhelmingly in favor of [the moving] party that the court believes that reasonable [jurors] could not arrive at a contrary verdict." Boeing Co., 411 F.2d at 374. Here, the facts do not point so strongly in favor of the Plaintiff. That is, the jury heard the Defendants testify to the fact that (1) they were informed that Lowe had been held hostage by Antonio Reese, (2) they were told that Plaintiff's address was Antonio Reese's trailer, (3) they were advised by Antonio Reese's probation officer that Antonio was in violation of his probation,[12] (4) the front door was open, which, if true, would have exposed the officers to

---

[12] It is worth noting that the Supreme Court has made clear that the Fourth Amendment provides lesser protection to parolees and probationers; such individuals may not complain of a warrantless search of their residence. United States v. Knights, 534 U.S. 112, 121, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001); Griffin v. Wisconsin, 483 U.S. 868, 875-76, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987); United States v. Ward, 561 F.3d 414, 419-20 (5th Cir. 2009). Of course, officials may not search a home without a warrant based on the parolee/probationer exception if the home is not the residence of the parolee or probationer. See, e.g., Motley v. Parks, 432 F.3d 1072, 1078 (9th Cir. 2005) (en banc); Moore v. Vega, 371 F.3d 110, 116 (2d Cir. 2004); see also Steagald v. United States, 451 U.S. 204, 220, 101 S. Ct. 1642, 68 L. Ed. 2d 38 (1981) (holding that officials may not enter a third-party's home to locate the subject of an arrest warrant unless they also hold a search warrant for the home). However, if officials reasonably believe that a parolee or probationer lives at a particular house, courts appear to analyze the search as if the parolee or probationer in fact lived there. United States v. Barrera, 464 F.3d 496, 500-01 (5th Cir. 2006); Motley, 432 F.3d at 1078; Moore, 371 F.3d at 117. Thus, "[i]f the [D]efendant[s] *reasonably* believed" that Plaintiff's trailer was actually where Antonio Reese lived, "then the Fourth Amendment rights of the [P]laintiff would not have been violated by the warrantless search, even if [Antonio Reese] was not, in fact, a resident there." Ulitchney v. Ruzicki, 2009 WL 5217058, at *6 (M.D. Pa. Dec. 30, 2009) (emphasis in original).

In order to determine whether an officer has reason to believe an individual is residing in and present at a residence, courts appear to apply a "common sense approach[,] considering "the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality." United States v. Veal, 453 F.3d 164, 167-68 (3d Cir. 2006)

---

more danger, (5) upon entering the trailer, they initially believed that the Plaintiff, Antonio Reese's cousin, was Antonio, (6) after realizing Antonio was not in the trailer, the officers left, and (7) that the "search" of the trailer only took two or three minutes at most. Thus, based on the totality of the circumstances in this case, the Court is unable to say that a jury could not find that the Defendants' "conduct" was "arguably proper," Halperin, 807 F.2d at 186, when viewed from the objective prospective of a reasonable officer. Accordingly, Plaintiff's Motion for judgment as a matter of law is denied.

B. Inconsistency of the Verdict

Plaintiff's Rule 50 motion also alleges that a finding of both a Fourth Amendment violation and qualified immunity is inconsistent. Specifically, Plaintiff contends that "Defendants could not search Plaintiff's home without a warrant absent exigent circumstances[,] [and] [s]ince the jury found a lack of exigent circumstances, there is not qualified immunity."

When evaluating a claim that the jury's answers are inconsistent, courts should adopt a view of the case, if there is one, which resolves any seeming inconsistency. Atlantic & Gulf

(quoting United States v. Magluta, 44 F.3d 1530, 1535, 1536 (11th Cir. 1995)). In this case, as noted above, Defendant Perkins testified that Spence told them that Lowe was being held hostage at Antonio Reese's place. Further, Perkins testified that Antonio's probation officer had told him that Antonio was in violation of his probation and that the Plaintiff's address is where Antonio lived. While, during trial, Perkins conceded that he did not look at the mailboxes to be certain the address was Antonio's, Perkins also testified that there was not an address on the trailer itself. Further, when Antonio was home, he actually stayed with his grandmother, the house right next to the Plaintiff's trailer. While the Court is not holding that the Defendants in fact had a reasonable belief that Antonio Reese resided at Plaintiff's address, as whether a Fourth Amendment violation occurred in this case is not the question before the Court, the Court does find this noteworthy when reviewing whether a jury could find that the Defendants acted objectively reasonable under clearly established law.

Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S. Ct. 780, 7 L. Ed. 2d 798 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way."); White v. Grinfas, 809 F.2d 1157, 1161 (5th Cir. 1987) ("Courts are obligated to reconcile a jury's answers when possible."). If the jury's answers cannot be rationally harmonized, the Court must vacate the judgment and order a new trial. Crossland v. Canteen Corp., 711 F.2d 714, 726 (5th Cir. 1983) (vacating and remanding for a partial new trial on damages).

At the outset, the Court notes that it is undisputed that the jury's first verdict in this case was inconsistent. That is, the jury first returned a verdict finding that: (1) Plaintiff's Fourth Amendment rights were violated due to the absence of exigent circumstances, (2) Defendants were entitled to qualified immunity, and (3) damages should be awarded to Plaintiff in the amount of $30,000. Due to this discrepancy, the Court resubmitted the questions to the jury. See, e.g., Richard v. Firestone Tire & Rubber Co., 853 F.2d 1258, 1259-60 (5th Cir. 1988) (noting that a district court may indeed resubmit questions to jurors); Duk v. MGM Grand Hotel, Inc., 320 F.3d 1052, 1056 (9th Cir. 2003) ("The practice of resubmitting an inconsistent verdict to the jury for clarification is well-accepted."). After the Court resubmitted the inconsistent verdict, the jury returned a second verdict, finding that: (1) Plaintiff's Fourth Amendment rights were violated due to the absence of exigent circumstances, (2) Defendants were still entitled to qualified immunity, and (3) no damages should be awarded.

Despite Plaintiff's contentions, the jury's verdict of both qualified immunity and a Fourth Amendment violation is not inconsistent, as the two findings are not mutually

exclusive.  Conflating the qualified immunity issue to merely whether a Fourth Amendment violation occurred would make the two-step inquiry of a constitutional violation *plus* objective reasonableness redundant and perverse.  That is, if every finding of a constitutional violation automatically resulted in liability, the very notion of immunity would be a nullity.  Likewise, the doctrine of qualified immunity would be unnecessary if it only applied to situations when no constitutional right or violation existed – government officials would need no immunity if they did nothing "wrong."  Qualified immunity is only meaningful if it shields government officials from trial and liability when they would otherwise be liable.  <u>See Anderson</u>, 483 U.S. at 643-44, 107 S. Ct. 3034; <u>see</u> <u>also</u> <u>Greason v. Kemp</u>, 891 F.2d 829, 841 (11th Cir. 1009) (Edmondson, J., dissenting) (noting that if qualified immunity were available only when a jury could not find a constitutional tort, the doctrine of qualified immunity would be "superfluous").

The jury's finding that exigent circumstances did not exist established a Fourth Amendment violation.  However, just because the jury decided that there were no exigent circumstances does not mean the police could not have reasonably and objectively believed that there were. <u>See</u> <u>Aczel v. Labonia</u>, 2006 WL 2715345, at *4 (D. Conn. Sept. 22, 2006) (finding that it is not inconsistent for a jury to decide both that an officer has employed excessive force and that he is entitled to qualified immunity); <u>Kent v. Katz</u>, 327 F. Supp. 2d 302, 309 (D. Vt. 2004) (same); <u>but</u> <u>see</u> <u>Stephenson v. Doe</u>, 332 F.3d 68, 78-79 (2d Cir. 2003).[13]  In other words, it is not inconsistent to find that Defendants were "unreasonable" in

---

[13] The case of <u>Stephenson v. Doe</u>, where the Second Circuit found that the finding of both excessive force and qualified immunity was inconsistent, is distinguishable from this case. Not only does this case not contain an excessive force issue, but, here, the wording of

thinking exigent circumstances in fact existed – thereby committing a Fourth Amendment violation – while still finding that Defendants are entitled to qualified immunity because their conduct was nevertheless objectively "reasonable" in the situation they confronted. The Supreme Court's qualified immunity cases have long recognized this seeming paradox of "reasonably unreasonable" behavior. See Anderson, 483 U.S. at 643, 107 S. Ct. 3034. In Anderson, an unlawful search case like the one here, the Court plainly rejected the plaintiff's argument that "[i]t is not possible . . . to say that one 'reasonably' acted unreasonably," and that "it is inappropriate to give officials alleged to have violated the Fourth Amendment – and thus necessarily to have unreasonably searched or seized – the protection of qualified immunity intended only to protect reasonable action." Id. The Court admonished that such an argument was "foreclosed by the fact that [the Court] ha[d] previously extended qualified immunity to officials who were alleged to have violated the Fourth Amendment." Id. (citing Malley, 475 U.S. at 341, 106 S. Ct. 1092 (police officers alleged to have caused an unconstitutional arrest); Mitchell v. Forsyth, 472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) (officials alleged to have conducted warrantless wiretaps)). The Court further went on to say that, irrespective of the Court's prior holdings, Plaintiff's arguments were still "unpersuasive." Anderson, 483 U.S. at 643, 107 S. Ct. 3034. The Court reasoned that this

---

the actual jury instructions, by which both exigent circumstances and qualified immunity were submitted separately to the jury via special interrogatories, is not challenged in this motion, and the instructions differ from those found by the Stephenson court to have confused the jury by failing to distinguish the varying bases for finding excessive force as opposed to finding qualified immunity.  Further, the Second Circuit made sure to note that the court was "not suggest[ing] that allowing a jury to decide both the excessive force and the qualified immunity issues will always throw doubt on the validity of the jury's verdict." The court merely held that "on this record" – i.e., due to the confusion in the jury instructions – there was doubt in the validity of the jury's finding.

concept of "reasonably unreasonable" behavior was merely attributable to linguistic happenstance, as opposed to conflicting doctrines. Id., 107 S. Ct. 3034. As the Anderson Court explained,

> [Plaintiff's argument's] surface appeal is attributable to the circumstance that the Fourth Amendment's guarantees have been expressed in terms of "unreasonable" searches and seizures. Had an equally serviceable term, such as "undue" searches and seizures been employed, what might be termed the "reasonably unreasonable" argument against application of Harlow to the Fourth Amendment would not be available-just as it *would* be available against application of Harlow to the Fifth Amendment if the term "reasonable process of law" had been employed there. The fact is that, regardless of the terminology used, the precise content of most of the Constitution's civil-liberties guarantees rests upon an assessment of what accommodation between governmental need and individual freedom is reasonable, so that the Creightons' objection, if it has any substance, applies to the application of Harlow generally. We have frequently observed, and our many cases on the point amply demonstrate, the difficulty of determining whether particular searches or seizures comport with the Fourth Amendment. See, e.g., Malley, *supra*, 475 U.S., at 341, 106 S. Ct. at 1096. Law enforcement officers whose judgments in making these difficult determinations are objectively legally reasonable should no more be held personally liable in damages than should officials making analogous determinations in other areas of law.

Id. at 643-44.

The Fifth Circuit has also recognized this notion of "reasonably unreasonable" conduct. In affirming an award of qualified immunity in an excessive force case, the court in Snyder v. Trepagnier reasoned that a jury could find that while the officer's force was unreasonable, a reasonable officer could still conclude that the use of force would not violate clearly established law under the facts and in the situation that the officer confronted.[14] 142

---

[14] The Snyder court acknowledged that, in the context of excessive force, "some other circuits . . . take the position that a finding of excessive force precludes a finding of qualified immunity." 143 F.3d at 801 n.10 (citing Alexander v. Cnty of Los Angeles, 64 F.3d 1315, 1322 (9th Cir. 1995); Scott v. Henrich, 39 F.3d 912, 914 (9th Cir. 1994); Hunter v. District of

F.3d 791, 800-01 (5th Cir. 1998); see also Manis v. Lawson, 585 F.3d 839, 845-46 (5th Cir. 2009) (even if officer violated Fourth Amendment by fatally shooting suspect in his vehicle when, in defiance of orders from police, he refused to show his hands and instead reached under the seat, the officer still enjoyed immunity because the conduct was objectively reasonable); Petta, 143 F.3d at 914 (even though plaintiffs asserted a valid claim of excessive force under Section 1983, the officer was still entitled to qualified immunity). In reconciling this jury verdict, the Snyder court relied on Presley v. City of Benbrook, 4 F.3d 405 (5th Cir. 1993). In Presley, the jury determined that although the officers' entry into plaintiff's residence violated the Fourth Amendment, the officers were nonetheless entitled to qualified immunity. Id. at 407. The Fifth Circuit first concluded that these two jury answers "are not inconsistent," and then went on to commend the jury's ability to comprehend the notion of reasonably unreasonable behavior, stating that "[t]he difference between these two findings [as to qualified immunity and unlawful entry] reflects remarkable discernment by a jury in an area in which even judges get confused . . . [the answers] reflect the essence of qualified immunity: that an officer may make mistakes that infringe constitutional rights and yet not be held liable . . . ." Id. at 409 (citations omitted). Thus, the jury's finding in this case that, even given a Fourth Amendment violation, the Defendants still acted objectively reasonable is not inconsistent or unreliable. As such, Plaintiff's Motion is denied.

***Nominal Damages***

Plaintiff next argues that she is entitled to nominal damages of $1.00 because the jury found there was a constitutional violation. Plaintiff claims that a finding of qualified

Columbia, 943 F.2d 69, 77 (D.C. Cir. 1991); Street v. Parham, 929 F.2d 537, 540 (10th Cir. 1991)).

immunity should not invalidate an award of nominal damages. The Court disagrees. The qualified immunity defense completely shields Defendants from any liability in their individual capacities. See Harlow, 457 U.S. at 817, 102 S. Ct. 2727. While it is established that the "defenses of qualified and absolute immunity to do not extend to suits for injunctive relief," Valley v. Rapides Parish School Bd., 118 F.3d 1047, 1051 (5th Cir. 1997), nominal damages, even in the amount of a dollar, are still legal damages. Thus, Plaintiff is not entitled to such nominal damages. See Hopkins v. Saunders, 199 F.3d 968 (8th Cir. 1999) (finding that qualified immunity precludes an award of even nominal damages in a Section 1983 case); Hicks v. Feeney, 850 F.2d 152, 155 n.4 (3d Cir. 1988) ("Since [Plaintiff] was not entitled to any judgment while qualified immunity remained open he could not obtain damages, nominal or otherwise, on this record."); Hartley v. Fine, 780 F.2d 1383, 1388 (8th Cir. 1985) (same); Zamecnik v. Indian Prairie Sch. Dist. No. 204 Bd. of Educ., 619 F. Supp. 2d 517, 528 (N.D. Ill. 2007) ("Qualified immunity applies to damages claims against government officials in their individual capacities, including claims for nominal damages.").[15]

### New Trial Motion

Plaintiff alternatively moves for a new trial in this case. Rule 59 of the Federal Rules of Civil Procedure permits this court to grant a new trial. The rule states that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal

---

[15] Other courts, including the Fifth Circuit, have also implicitly recognized the legal nature of nominal damages by finding them to be barred by qualified immunity. See, e.g., Rheuark v. Shaw, 628 F.2d 297, 299 (5th Cir. 1980); Ruvalcaba v. Los Angeles, 167 F.3d 514, 524 (9th Cir. 1999); Cummins v. Campbell, 44 F.3d 847, 849 (10th Cir. 1994); Fox v. Bd. of Trs. of State Univ. of N.Y., 42 F.3d 135, 141 (2d Cir. 1994).

court." FED. R. CIV. P. 59(a)(1)(A). "A new trial may be granted, for example, if the district court finds that the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in the course of the trial." Torns v. Pennington, 2008 WL 4224912, at *1, 2008 U.S. Dist. LEXIS 69023 at *5 (N.D. Miss. Sept. 11, 2008) (citing Eyre v. McDonough Power Equip., Inc., 755 F.2d 416, 420-21 (5th Cir. 1985)).

Plaintiff never once discusses or supports the grounds for her new trial motion. As such, the Court assumes that Plaintiff's motion for a new trial is based on the same grounds as her Rule 50 motion. When analyzing a motion for a new trial, "a judge . . . need not view the evidence in the light most favorable to the verdict winner . . . [and may] reweigh the evidence." Vazzana v. City of Greenville, 2007 WL 465631, at *2, 2007 U.S. Dist. LEXIS 9227, at *4-*5 (N.D. Miss. February 8, 2007). Here, however, the Court cannot say that the jury's verdict of qualified immunity goes against the evidence as to necessitate a new trial. The Court's analysis in denying Plaintiff's Rule 50 motion is equally applicable to Plaintiff's new trial motion. The verdict is not inconsistent, and the jury had sufficient grounds to find that the Defendants' conduct was objectively reasonable under clearly established law. Thus, Plaintiff's Motion for a New Trial is denied.

## IV. CONCLUSION

For the reasons stated above, the Court denies Plaintiff's Motion in its entirety.

So ordered on this, the  27th   day of ____January_____, 2011.

/s/  Sharion Aycock
**UNITED STATES DISTRICT JUDGE**